## Freedom Care LLC v New York State Dept. of Health

2025 NY Slip Op 31018(U)

March 26, 2025

Supreme Court, New York County

Docket Number: Index No. 161036/2024

Judge: Verna L. Saunders

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. VERNA L. SAUNDERS, JSC**        PART    36

*Justice*

-------------------------------------------------------------------X

FREEDOM CARE LLC,

Petitioner,

- v -

NEW YORK STATE DEPARTMENT OF HEALTH, JAMES V.
MCDONALD, and PUBLIC PARTNERSHIPS LLC,

Respondents.

-------------------------------------------------------------------X

INDEX NO.            161036/2024

MOTION SEQ. NO.           001

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 25, 26, 27, 29, 31, 32, 33, 34, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 98, 99, 100, 110, 111, 124, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135

were read on this motion to/for          **PRELIMINARY INJUNCTION**          .

Petitioner Freedom Care LLC ("petitioner") commenced this special proceeding against respondents New York State Department of Health ("DOH"), James V. McDonald ("McDonald"), and Public Partnerships LLC ("PPL") seeking to challenge what petitioner claims was a "sham bidding process" that resulted in a contract award to PPL to serve as Statewide Fiscal Intermediary, a position created pursuant to a recent amendment to New York's Consumer Directed Personal Assistance Program ("CDPAP"), codified at Social Services Law § 365-f (NYSCEF Doc. Nos. 1, *petition*; 7, *statute*).

As relevant background, petitioner is a fiscal intermediary that provides administrative and financial functions in connection with CDPAP, a service available through the New York State Medicaid Program ("Medicaid"). Through CDPAP, qualified Medicaid beneficiaries can receive home care services by hiring personal assistants to provide at-home personal care or nursing services. Fiscal intermediaries assist with providing administrative services to these Medicaid beneficiaries, consisting of processing personal assistants' wages, benefits, and tax withholdings. They also assist in maintaining related records. To better regulate the program, on April 20, 2024, the New York Legislature amended the CDPAP to move from multiple intermediaries to a single statewide fiscal intermediary to be selected by DOH.

On June 17, 2024, DOH issued Request for Proposals ("RFP") # 20524, seeking competitive proposals from qualified bidders to provide statewide fiscal intermediary services (NYSCEF Doc. No. 8, *request for proposals*). A third amendment[1] to the RFP was issued on August 7, 2024 (NYSCEF Doc. No. 9, *[third]amendment to RFP*). The RFP was available to entities "capable of performing statewide fiscal intermediary services with demonstrated cultural

---

[1] Two prior amendments were issued for the RFP on July 19, 2024 (NYSCEF Doc. No. 46) and August 2, 2024 (NYSCEF Doc. No. 2024), extending the deadlines for responses to written questions posted by DOH and submission of proposals.

**161036/2024  FREEDOM CARE LLC vs. NEW YORK STATE DEPARTMENT OF HEALTH ET AL**          **Page 1 of 8**
Motion No.  001

1 of 8

and language competencies specific to the population of consumers and those of the available workforce with experience serving individuals with disabilities." Additionally, eligible bidders had to demonstrate that, as of April 1, 2024, they were "providing services as a fiscal intermediary on a statewide basis in at least one other state."[2] (*id.* at ¶ 3.1, *minimum qualifications*). As detailed in the RFP, the selected statewide fiscal intermediary would be responsible for the delivery of fiscal intermediary services to consumers receiving CDPAP, including: ensuring that subcontractors meet all applicable federal law and regulations; "[s]ubcontracting to facilitate the delivery of fiscal intermediary services to each entity that is a service center for independent living under section 1121 of the New York State Education Law ("EDN") and has been providing fiscal intermediary services since January 1, 2024, or earlier"; and "[s]ubcontracting with at least one entity per NYS DOH MLTC [(managed long term care)] rate setting region, as seen in Attachment D, that has a proven record of delivering services to individuals with disabilities and the senior population and has been providing fiscal intermediary services since January 1, 2012, or earlier." (NYSCEF Doc. No. 8 at ¶ 4.0).

On August 7, 2024, DOH released Questions and Answers pertaining to the RFP (NYSCEF Doc. No. 10). According to the DOH's Tabulation of Proposals, certified on August 21, 2024, one hundred thirty-six (136) bids were received in response to the subject RFP (NYSCEF Doc. No. 11, *tabulation of proposals*). Petitioner and PPL both submitted bids (NYSCEF Doc. Nos. 11, *tabulation of proposals*; 12, *petitioner's technical proposal*; 13, *petitioner's cost proposal*).

By letter dated September 30, 2024, DOH informed petitioner that PPL had been the successful vendor with respect to RFP #20524 (NYSCEF Doc. No. 15, *non-award letter*). Also on September 30, 2024, Governor Hochul's press office announced that PPL had been selected as the Statewide Fiscal Intermediary, indicating that PPL had assembled a "diverse alliance of subcontracted partners" throughout the State, consisting of more than thirty (30) "home care agencies currently active in New York's CDPAP." (NYSCEF Doc. No. 16, *September 30, 2024, press release*). Pursuant to a subsequent press release, issued on November 12, 2024, the State announced that the statewide partnership was expected to begin in January and take full effect by April 1, 2025; that DOH had conditionally approved twenty-four (24) "partners" to work with PPL, and that the partners collectively operate in all sixty-two (62) counties throughout the state; that additional CDPAP partners would be announced in the coming weeks; and that state officials and partners were beginning a comprehensive transition process (NYSCEF Doc. No. 17, *November 12, 2024, press release*).

In this special proceeding, petitioner maintains that DOH's award of the Statewide Fiscal Intermediary contract to PPL was made in violation of lawful procedure, affected by errors of law, arbitrary and capricious, and an abuse of discretion. Petitioner argues that the decision to award the contract to PPL was predetermined, as supported by statements allegedly made by an Assembly Member on social media platform X, in April 2024, that suggested PPL would be the winner of the contract, even before DOH issued its RFP in June 2024. Capitol Confidential and

---

[2] The third amended RFP clarified that "'statewide basis in at least one other state' means that the entity is currently engaged in a contract with a single State agency established or designated to administer or supervise the administration of the State's Medicaid program in a state other than New York, to be a provider of fiscal intermediary services throughout the entire geographic area of the subject state." (NYSCEF Doc. No. 9 ¶ 3.1).

161036/2024  FREEDOM CARE LLC vs. NEW YORK STATE DEPARTMENT OF HEALTH ET AL          Page 2 of 8
Motion No.  001

2 of 8

the New York Post allegedly made similar statements (NYSCEF Doc. No. 3 at 15 nn 37, 38). Petitioner further asserts that, to eliminate potential competitors from eligibility, DOH imposed an extra-statutory conflicts provision that prohibited the Statewide Fiscal Intermediary from being owned or controlled by Licensed Home Care Services Agencies ("LHCSA") or a Medicaid-Medicare Coordination Office ("MMCO") in New York State, while imposing no such restrictions upon out-of-state entities. Petitioner also contends that DOH adopted a narrow construction of the phrase "statewide basis" in the RFP, "which limits bidders to those under a contract with the single state agency established or designated to administer or supervise the administration of the state's Medicaid program in a state other than New York." It contends that the RFP was strategically vague to allow DOH "cover to select PPL as the winner," irrespective of the strength or weakness of its bid. DOH, asserts petitioner, also refused to provide information relating to scoring or evaluation of bids, to the disadvantage of potential bidders. Additionally, petitioner posits that DOH construed the statutory phrase "providing services as a fiscal intermediary" in another state to mean "performing services similar to those required under Social Service Law 365-f," endowing DOH with unfettered discretion as to what services would comply with the statute.

Petitioner also asserts that DOH engaged with PPL and its "new alliance" of subcontractors during the restricted period. In furtherance of this argument, petitioner maintains that the press release on September 30, 2024, only hours after the selection was made, already included quotes from Commissioner McDonald, Governor Hochul, PPL's CEO, PPL's four "core regional home care partners," among others, establishing that DOH coordinated with PPL and the proposed subcontractors during the restricted period of the bidding process. Moreover, petitioner asserts that more than thirty (30) of the "regional partners" that PPL is working with are barred from being subcontractors by the CDPAP amendment since only a few entities have been providing fiscal intermediary services in New York since January 1, 2012. The CDPAP amendment, which removed the Comptroller's review of both the RFP and the award, allowed for DOH to structure the RFP and select PPL without oversight, argues petitioner.

Petitioner posits that the aforementioned facts support its claim that respondents orchestrated a sham bid process with a predetermined outcome, which was unlawful, arbitrary and capricious, and an agency action in violation of CPLR Article 78. Petitioner also claims that PPL was not a "responsible bidder" as is required by the RFP because it has an "abysmal record in other states" and, thus, DOH should have eliminated PPL from consideration and should not have granted it the Statewide Fiscal Intermediary award. According to petitioner, DOH also failed to select a proposal that offers the best value because PPL's bid was more costly and, unlike petitioner, PPL has not provided fiscal intermediary services in New York. This violated the statutory demand that DOH select a bid with the best value, petitioner avers. Petitioner also argues that based on the press release, DOH improperly relied on criteria extraneous to the RFP, i.e., that PPL would be moving its headquarters to New York and purportedly creating 1,200 new jobs in the state, which was not part of the RFP.

Petitioner claims it has established entitlement to a preliminary injunction prohibiting DOH and PPL from implementing the contract during the pendency of this action because petitioner is likely to succeed on the merits given the facts proffered in support of its claim that the bidding process was a sham; petitioner will suffer irreparable harm if respondents are not

161036/2024 FREEDOM CARE LLC vs. NEW YORK STATE DEPARTMENT OF HEALTH ET AL          Page 3 of 8
Motion No. 001

3 of 8

[* 3]

immediately enjoined because multiple plans have demanded petitioner to provide confidential personal data for consumers and personal assistants, petitioner can no longer enroll new consumers, affecting petitioner's business, staff and reputation; and it further asserts that the balance of the equities weighs in petitioner's favor because DOH and PPL will suffer no prejudice from an order preserving the status quo of the case.[3]  Furthermore, petitioner argues that the court should grant, pursuant to CPLR 408, expedited discovery of materials sought in the proposed document request and subpoena (NYSCEF Doc. No. 3, *memorandum of law*).

In further support of its application, petitioner submits an affidavit from Carlos Martinez ("Martinez"), Chief Executive Officer and Executive Director of "Bridges" – a not-for-profit organization dedicated to advocacy and leadership on behalf of people with disabilities. Martinez affirms that, on or about April 9, 2024, he attended a Zoom meeting with New York State's Chief Disability Officer ("CDO"), Kimberly Hill Ridley, to discuss, among other things, the transition to a single statewide fiscal intermediary.  Martinez avers that, at said meeting, "a staff member from the office of the CDO informed us that the State intended to choose [PPL], to take over as the statewide fiscal intermediary."  (NYSCEF Doc. No. 26, *Martinez affidavit*).

PPL interposed an answer (NYSCEF Doc. No. 35, *answer*) and opposes the instant application for a preliminary injunction (NYSCEF Doc. Nos. 36-39, *memorandum of law and exhibits*).  PPL argues that petitioner relies on nothing more than newspaper articles and press releases for its unfounded assertion that PPL was not a responsible bidder or that the contract award should be otherwise overturned.  This, argues PPL, is insufficient to establish likelihood of success on the merits on an application for a preliminary injunction.  Furthermore, petitioner's stated injury, which arise from the fact that consumers will be instructed to register with PPL prior to April 1, 2025, are economic in nature and, thus, fail to rise to the level of irreparable injury.  Additionally, it argues that the contract award to PPL will not, as petitioner claims, force petitioner out of business because petitioner can transition its business to operate as a subcontractor.  PPL insists it has invested an enormous amount of time and resources into meeting the deadline for operation as the sole Statewide Fiscal Intermediary, which includes moving its headquarters to New York State, and the court must also consider the impact on consumers who, upon the granting of a preliminary injunction, may lose access to critical healthcare needs.  The proposed disruption to the transition of its operation as the sole fiscal intermediary will affect CDPAP patients and consumers, belying petitioner's claim that a balance of the equities weighs in its favor.

PPL denies having been afforded an improper advantage over competitors and insists it abided by the terms of the RFP.  It asserts that, contrary to the arguments raised in the petition, it is a responsible bidder.  PPL asserts that petitioner's arguments that PPL is not a responsible bidder, appears to challenge the RFP and procurement itself, in that petitioner is essentially claiming that DOH failed to account for bidders' out of state experience in making a "responsibility" finding.  However, since the challenge was not raised until after the award was issued, it is untimely pursuant to § 5.3 of the RFP.  PPL also submits the affidavit of its president, Maria Perrin, rebutting the claims raised by petitioner regarding its performance in other jurisdictions, including in the States of Oregon and New Jersey (NYSCEF Doc. No. 37,

---

[3] The Court declined the application for a temporary restraining order (TRO) after oral argument (NYSCEF Doc. No. 27).

161036/2024  FREEDOM CARE LLC vs. NEW YORK STATE DEPARTMENT OF HEALTH ET AL          Page 4 of 8
Motion No.  001

4 of 8

*Perrin affidavit*). PPL also argues that it completed all necessary vendor responsibility documents as required by § 9.0 of the RFP, which included PPL's clean disclosure statement and vendor responsibility attestation.

Additionally, PPL argues that petitioner fails to appreciate that DOH evaluated each proposal based on the "Best Value" concept, selecting the proposal that best "optimizes quality, cost and efficiency among responsive and responsible bidders." According to PPL, petitioner fails to ignore that sixty-five (65%) percent of the RFP was based on technical proposal and thirty-five (35%) percent was based on the cost proposal. Thus, although petitioner argues that it cost proposal was lower than PPL, petitioner is a small-sized New York State-based fiscal intermediary company with inferior technological products and capabilities. Inasmuch as petitioner fails to submit proof to this court that PPL's proposal did not represent the best value overall, PPL argues the argument should be rejected.

Addressing the request for additional discovery, PPL argues that petitioner's request for discovery, including PPL's proposal or any of the procurement record, amounts to a fishing expedition. Moreover, PPL argues that its proposal contains a substantial amount of trade secrets, and confidential and proprietary information, that should not be made available to PPL's competitors (NYSCEF Doc. No. 36, *memorandum of law*).

DOH and respondent James V. McDonald, M.D., named in his official capacity as Commissioner of DOH (collectively, "DOH"), interposed a joint answer to the petition (NYSCEF Doc. No. 40) and oppose the application. By memorandum of law, DOH argues that, following a careful review of the bidders' technical proposals and cost proposals, its determination to award the contract to PPL was rational and fully supported by the record. DOH maintains that PPL's technical score was higher than petitioner's, given PPL's broad experience as a statewide contractor in fifteen (15) states and its cultural and linguistic capabilities, which included services that could support translation of over 300 languages and staff that could speak thirty-five (35) languages. DOH also argues that PPL's bid indicated that it would perform the contract at a cost that was forty-five (45%) percent lower than petitioner's bid. Furthermore, it asserts that petitioner has failed to establish entitlement to injunctive relief, nor has it shown entitlement to expedited discovery. The claims that PPL's selection was "predetermined" and that the bidding process was "rigged" is based on nothing more than speculation, argues DOH. DOH also argues that petitioner has failed to establish entitlement to a preliminary injunction because further delay of the transition to PPL will result in the same alleged harm petitioner claims in its petition, i.e., personal assistants and consumers would likely not be enrolled before the statutory deadline to the detriment of senior and disabled New Yorkers participating in CDPAP. DOH further argues that, insofar as it has failed to show "ample need" for discovery in this Article 78 proceeding, that branch of the motion seeking expedited discovery should be denied (NYSCEF Doc. No. 62, *memorandum of law*).

DOH proffers the affidavit of Amir Bassiri, Deputy Commissioner of the Office of Health Insurance Programs at DOH (NYSCEF Doc. Nos. 41-61, *Bassiri affidavit and Exhibits 1-19*).

161036/2024   FREEDOM CARE LLC vs. NEW YORK STATE DEPARTMENT OF HEALTH ET AL          Page 5 of 8
Motion No. 001

5 of 8

In reply, petitioner argues that respondents ignore most of the evidence that DOH pre-selected PPL and that they conducted a sham bidding process. Petitioner also claims that it uncovered additional evidence of DOH's preselection of PPL. According to petitioner, DOH selected a bidder with a conflict of interest insofar as more than twenty-five (25%) percent of PPL is owned by Public Consulting Group ("PCG") and its executives, which is a public sector management consulting firm that has more than half a billion dollars' worth of contracts with DOH and, thus, allegedly exerts influence over DOH's administration of Medicaid and CDPAP. PPL allegedly failed to disclose said conflicts.

To the extent DOH argues that PPL's bid received the highest overall score and, thus, there was a "rational" basis for selecting PPL as the winner, petitioner contends that the bid evaluation itself was skewed to give PPL an unfair advantage and was orchestrated so that PPL would receive the highest score. According to petitioner, DOH purposefully misled petitioner and other bidders into submitting higher proposals and awarded PPL technical points for arbitrary criteria. For example, petitioner maintains that, based on DOH's responses to questions posed by the bidders, the bidders operated under the assumption that DOH would not allow the State Fiscal Intermediary to earn money from the direct case service costs, prompting petitioner to raise its cost proposal and materially affecting its overall score. Additionally, DOH did not consider PPL's responsibility when selecting it as the winner, and DOH's reliance on a bidder's self-reporting was arbitrary and capricious. Petitioner reiterates that DOH failed to enforce the statute's and RFP's requirements and relied on extraneous considerations in selecting PPL, to wit; proposing subcontractors, which was optional, even though many of the proposed partners were not eligible to be subcontractors. To the extent Bassiri asserts that subcontractor networks in a bidder's proposal were not considered by DOH in the scoring process, this, argues petitioner, contradicts DOH's opposition papers. Additionally, it contends that DOH refused to provide sufficiently precise scoring criteria to bidders. Although petitioner maintains that the court has ample proof to grant the petition, in the alternative, it argues that the court should grant a preliminary injunction and expedite discovery in this case.

In support of these claims, petitioner submits the affidavits of its CEO, Yoel Gabay (NYSCEF Doc. No. 66); Jacob Singer, founder of Collection Shield 360 and Kredit (NYSCEF Doc. No. 68); Bryan Marcou-O'Malley, Executive Director of the Consumer Directed Personal Assistance Association of New York State, Inc. (NYSCEF Doc. No. 69); and Brian Watkins, former Medicaid Program Manager in DOH through Staffing Solutions Organization, a subsidiary of PCG (NYSCEF Doc. No. 70). Petitioner's counsel also submits a supplemental affirmation, which annexes thereto additional supplemental exhibits (NYSCEF Doc. Nos. 74-96).[4]

A judicial review of an administrative determination is limited to whether said determination was arbitrary and capricious or made without a rational basis in the administrative record (see *Matter of Pell v. Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222, 231 [1974]). It is well-settled that, in reviewing an agency determination, the court may not substitute its own view of the

---

[4] Arguments and documents raised and introduced for the first time in reply are improper and, therefore, will not be considered by this court (see *Amtrust-NP SFR Venture, LLC v Vazquez,* 140 AD3d 541, 541-542 [1st Dept 2016]; *Dannasch v Bifulco,* 184 AD2d 415, 417 [1st Dept 1993]).

evidence for that of the agency, even if the court would have reached a different result (see *Matter of Peckham v Calogero,* 12 NY3d 424, 431 [2009]).

Under CPLR 6301, the "party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor" (*Nobu Next Door*, 4 NY3d 839, 840 [2005]). "A preliminary injunction is a provisional remedy. Its function is not to determine the ultimate rights of the parties, but to maintain the status quo until there can be a full hearing on the merits" (*Residential Bd. of Mgrs. of Columbia Condominium v Alden*, 178 AD2d 121, 122 [1st Dept 1991]; *61 W. 62 Owners Corp. v CGM EMP LLC*, 77 AD3d 330, 337 [1st Dept 2010].) It is well-settled that "[p]reliminary injunction are drastic remedies, substantially limiting the nonmovant's rights, and are awarded in special circumstances." (*1234 Broadway LLC v W. Side SRO Law Project*, 86 AD3d 18, 23 [1st Dept 2011]).

Here, petitioner's application is denied, and the petition is dismissed. Petitioner seeks to invalidate DOH's award to PPL on the ground that PPL's selection was predetermined and part of a sham process. However, petitioner's claims of a "sham process" rest on nothing more than conjecture, speculation, and unsubstantiated assertions. While there may have been statements purportedly made prior to the RFP in June 2024, suggesting that PPL would prevail as the Statewide Fiscal Intermediary, this fact is insufficient to impute wrongdoing on DOH in facilitating the bidding process. Furthermore, claims by Martinez that an undisclosed "staff member" of the office of the CDO confirmed a pre-selection of PPL, lack probative value. Moreover, this court agrees with respondents that petitioner, in essence, seeks to collaterally attack the requirements of the RFP, arguing that the RFP was artificially crafted to arrive at the selection of PPL. However, any such challenge on this basis is untimely (see NYSCEF Doc. No. 8 § 5.3).

To the extent petitioner claims that the award should be annulled on the basis that DOH failed to provide critical information relating to scoring or evaluation of bids in its Questions and Answers, to the detriment of other fiscal intermediaries, the argument is rejected. Bassiri, in opposition to the instant application, explains that "[i]t is not the practice of the Department to release precise scoring criteria during the question and answer process for any procurement that it conducts" (NYSCEF Doc. No. 41 ¶ 70). Notably, petitioner submits no proof showing that PPL was otherwise provided said information to afford it any advantage over other bidders. Although petitioner maintains that DOH engaged with PPL during the "restricted period", Bassiri avers that PPL was notified by telephone on September 27, 2024, after completion of the review process, that it had been selected as the Statewide Fiscal Intermediary and that, at no point prior to that date, had DOH and PPL had any communication to influence the procurement. Petitioner's claims to the contrary, based largely on the September 30, 2024, press release, are unsupported in this application. This court also declines to find that PPL is not a responsible bidder. DOH determined, based on its review of PPL's completed vendor responsibility documents pursuant to section 9.0 of the RFP, and after addressing issues revealed through its own investigation (NYSCEF Doc. No. 41 § 94), that no issues affected PPL's ability to fulfil its contractual requirements. Affording due deference to the agency, said determination will not be disturbed on this application. Petitioner has failed to show that respondents lacked a rational basis for selecting PPL for the award. Bassiri's affidavit sets forth in detail the process DOH

**161036/2024   FREEDOM CARE LLC vs. NEW YORK STATE DEPARTMENT OF HEALTH ET AL**          **Page 7 of 8**
Motion No. 001

[* 7]

7 of 8

followed in selecting the winning bid and the criteria considered, i.e., administrative, technical, and cost proposals, which resulted in PPL's score of 100 points compared to petitioner's 76.26. He further represents to this court that any proposed subcontractor network in a bidder's proposal was not considered by DOH in the scoring of PPL's bid, and petitioner's contention that DOH improperly relied on extraneous factors is not supported by the record and is therefore rejected. Thus, upon thorough consideration of the papers and, after according the agency due deference in its interpretation of the relevant statutes and regulations, this court finds that petitioner has failed to establish a basis for disturbing the award to PPL, nor has it established entitlement to a preliminary injunction.[5] Petitioner has also failed to establish entitlement to discovery in this proceeding. All other arguments have been considered and are either without merit or need not be addressed given the findings above. Accordingly, it is hereby

**ORDERED** that petitioner's motion is denied in its entirety and the petition is dismissed; and it is further

**ORDERED** that, within twenty (20) days after this decision and order is uploaded to NYSCEF, counsel for respondents shall serve a copy of this decision and order, with notice of entry, upon petitioner.

This constitutes the decision and order of this court.

___**March 26, 2025**___                                   _____
                                                           HON. VERNA L. SAUNDERS, JSC

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

_____

[5] Petitioner filed a subsequent Order to Show Cause, with application for a temporary restraining order (Mot. Seq. 003), seeking an order enjoining state respondents from taking any action to enforce the April 1, 2025 date, pursuant to Section 365-f(4-a-1) of the New York Social Services Law, pending disposition of Freedom Care's Article 78 Petition. Oral argument was held on the TRO. After due consideration of the supporting arguments and those advanced in opposition thereto and, given the findings above, the court denies the application for a temporary restraint and declines to sign the Order Show to Cause.

161036/2024  FREEDOM CARE LLC vs. NEW YORK STATE DEPARTMENT OF HEALTH ET AL          Page 8 of 8
   Motion No. 001

[* 8]