Matter of Madison Sq. Garden Entertainment Corp. v New York State Liq. Auth. (2023 NY Slip Op 06090)

Matter of Madison Sq. Garden Entertainment Corp. v New York State Liq. Auth.

2023 NY Slip Op 06090

Decided on November 28, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: November 28, 2023

Before: Oing, J.P., Gesmer, Mendez, Shulman, JJ. 

Index No. 152318/23, 151152/23 Appeal No. 11001101-1102-1103 Case No. 2023-02125, 2023-02246, 2023-02352 

[*1]In the Matter of Madison Square Garden Entertainment Corp. et al., Petitioners-Appellants,
v
New York State Liquor Authority et al., Respondents-Respondents.
In the Matter of Madison Square Garden Entertainment Corp. et al., Petitioners-Appellants,
v
New York State Liquor Authority, Respondent-Respondent.

King & Spalding LLP, New York (Randy M. Mastro of counsel), for appellants.
Letitia James, Attorney General, New York (Anthony R. Raduazo of counsel), for New York State Liquor Authority, Sharif Kabir, Michael Ammirato and Charles Stravalle, respondents.
Shannon Kearney-Sarfoh, Albany (Lawrence Schwartz of counsel), for New York State Liquor Authority, respondent.

Judgment, Supreme Court, New York County (Arthur F. Engoron, J.), entered April 5, 2023, granting the cross-motion of respondents (SLA) to dismiss the petition seeking a writ of prohibition and an injunction to preclude an SLA investigation and resulting administrative proceedings allegedly undertaken in excess of jurisdiction or based on an arbitrary and capricious interpretation of its regulations, and declaratory relief, and dismissing the hybrid proceeding brought pursuant to CPLR articles 30 and 78, unanimously affirmed, without costs. Order, same court and Justice, entered April 13, 2023, which denied the petition seeking to quash an investigatory subpoena duces tecum issued by SLA to a nonparty or, alternatively, a protective order limiting the scope of the subpoena, and ordered submission of the requested documents and deposition transcripts to the court for in camera inspection, unanimously reversed, on the law, without costs, the petition granted, and the subpoena quashed. Appeal from order, same court and Justice, entered May 9, 2023, which, inter alia, found that certain documents reviewed in camera were relevant and not proprietary or prejudicial, unanimously dismissed, without costs, as academic.
In the hybrid article 78 proceeding, petitioners failed to establish a clear legal right to a writ of prohibition based on the allegation that SLA exceeded its authority by investigating and charging them under the Alcoholic Beverages Control Law and regulations promulgated thereunder (see CPLR 7803[2]). We reject petitioners' contention that SLA lacks authority to revoke their special on-premises licenses based on the allegation that, among other things, their venues — Madison Square Garden, the Beacon Theater, and Radio City Music Hall — "cease[d] to be operated as a bona fide premises within the contemplation of the license issued for such premises, in the judgment of the Authority," on the grounds that a policy excluding certain attorneys bringing actions against any of their affiliates renders the venues no longer open to the general public (9 NYCRR 53.1[d]; see Alcoholic Beverage Control Law § 64-a).
SLA is authorized "to determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages" (Alcoholic Beverage Control Law § 2), classify premises for eligibility by regulation, and determine conditions for the sale of alcoholic beverages with "due regard to the convenience of the public" (Alcoholic Beverage Control Law §§ 64-a[6], 106[4][b]). In that capacity, SLA classifies theaters, concert halls, and sports venues together with restaurants as qualifying for "on-premises licenses" (9 NYCRR 48.1[a], [b], [e]). Indeed, in 1964 the Alcoholic Beverage Control Law was amended to "relax[]" the "food-servicing requirements" applicable to on-premises licenses prior to that time (Matter of Edwards Catering v State Liq. Auth., 45 Misc 2d 1031, 1033 [Sup Ct, Bronx County 1964], citing [*2]L. 1964 ch. 531 § 4; see Alcoholic Beverage Control Law §§ 64, 64-a[6]). Given this exercise of its statutory authority, SLA has not acted in excess of jurisdiction by applying the "open to the general public" standard, upheld by the Court of Appeals in a license revocation proceeding against a restaurant under the same Rule 53.1(d), to petitioners' venues (see Matter of 330 Rest. Corp. v State Liq. Auth., 26 NY2d 375, 377-378 [1970]). We note further that this regulation, which does not explicitly require premises to be open to the general public, has existed since at least 1966 when an amendment thereto was registered (see Greater N.Y. Taxi Assn. v New York City Taxi & Limousine Commn., 25 NY3d 600, 612 [2015] ["Where an agency has promulgated regulations in a particular area for an extended time without any interference from the legislative body, we can infer, to some degree, that the legislature approves of the agency's interpretation or action"]).
The article 78 causes of action alleging that SLA made determinations to investigate and charge them that were arbitrary and capricious, an abuse of discretion, or affected by an error of law, fail since petitioners have not exhausted their administrative remedies (CPLR 7801[1], 7803[3]). The administrative proceeding is ongoing, with an evidentiary hearing pending, after which an administrative law judge will issue a report and recommendation, the SLA board will make the ultimate determination, and petitioners may thereafter seek judicial review (Alcoholic Beverage Control Law §§ 119[1]-[3], 121[2]; 9 NYCRR 54.4[a]-[g], [i], 54.6[a]-[b]; see DiGiacomo v New York City Civilian Complaint Review Bd., 214 AD3d 531, 532 [1st Dept 2023]; Cambridge Dev., LLC v Novello, 26 AD3d 220, 221 [1st Dept 2006]). Contrary to petitioners' contention, participating in the hearing will not be futile, as nothing in the record shows that the ALJ or any SLA board member deciding the case has prejudged the facts, either concerning the scope of the policy excluding these attorneys or, under a separate charge, the impact that a change in ownership of the corporate parent controlling the petitioner licensees may have on their compliance with Alcoholic Beverage Control Law § 99-d[2] (see Matter of Schultz v State of New York, 86 NY2d 225, 232 [1995]; compare Matter of Beer Garden v New York State Liq. Auth., 79 NY2d 266, 279 [1992]; Matter of 1616 Second Ave. Rest. v New York State Liq. Auth., 75 NY2d 158, 165 [1990]).
Petitioners are also not entitled to injunctive relief since they cannot show a likelihood of success on the merits under the facts of this case (see 1234 Broadway LLC v West Side SRO Law Project, Goddard Riverside Community Ctr., 86 AD3d 18, 23 [1st Dept 2011]).
Petitioners' cause of action for declaratory relief, to the extent based on the allegation that Rule 53.1(d) is invalid or invalidly applied, fails for the reasons discussed above (CPLR 3001). Similarly, a declaration that the decision to investigate [*3]and bring charges was arbitrary and capricious is inappropriate, as "a declaratory judgment action is not the proper vehicle to challenge an administrative procedure, where judicial review by way of article 78 proceeding is available" (Greystone Mgt. Corp. v Conciliation & Appeals Bd. of City of N.Y., 62 NY2d 763, 765 [1984]; see Matter of Elder v Russ, 212 AD3d 430, 430 [1st Dept 2023]).
However, Supreme Court should have granted the petition seeking to quash the investigatory subpoena, issued to a nonparty 11 days before SLA filed the charges against petitioners. Although SLA was authorized to "engage in the investigation," we find that it did not have statutory authority to "issue the subpoena" when it was served (Matter of County of Suffolk v Kennedy, 211 AD3d 937, 939 [2d Dept 2022]; see also Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 256 [1973]).
While some administrative agencies are authorized by statue to issue investigatory subpoenas, that is not the case here (see e.g. Anheuser-Busch, Inc. v Abrams, 71 NY2d 327, 332 [1988], citing General Business Law § 343; Matter of Levin v Murawski, 59 NY2d 35, 39 [1983]). Instead, the Alcoholic Beverage Control Law authorizes SLA to "hold hearings, subpoena witnesses, compel their attendance, administer oaths, to examine any person under oath and in connection therewith to require the production of any books or papers relative to the inquiry," with subpoenas being regulated by the CPLR (Alcoholic Beverage Control Law § 17[5]). Similarly, the CPLR allows nonjudicial subpoenas to be issued by, among others, the "attorney of record of a party to ... an administrative proceeding," or any member of an agency's "board, commission or committee authorized by law to hear, try or determine a matter or to do any other act, in an official capacity, in relation to which proof may be taken or the attendance of a person as a witness may be required" (CPLR 2302[a]). Here, there was no pending administrative proceeding, and no scheduled hearing at which proof or testimony was required.
Contrary to SLA's contention, its authority to inspect "all books and records located upon the premises" during operating hours does not grant authority to issue an investigatory subpoena to an unrelated party (Matter of Barski v State Liq. Auth., 285 AD 996, 996 [4th Dept 1955]).
The subpoena also failed to comply with the CPLR by giving the nonparty only four days to produce the requested documents. The time of "inspection ... shall be not less than twenty days after service of the ... subpoena" (CPLR 3120[2]). That SLA's opposition to the petition to quash satisfied the otherwise mandatory requirement to provide "notice" of the circumstances and reasons for the subpoena "on the face of the subpoena or in a notice accompanying it" (Velez v Hunts Point Multi-Serv. Ctr., Inc., 29 AD3d 104, 111 [1st Dept 2006], citing CPLR 3101[a][4]), is unavailing. SLA cites no authority for the proposition that the failure to provide [*4]the nonparty with 20 days notice may be excused (compare Lyons v New York City Economic Dev. Corp., 2021 NY Slip Op 31670[U] [Sup Ct, NY County 2021]; MG v RG, 50 Misc 3d 1201[A] at *3-4 [Sup Ct Kings County 2015]; Battaglia v Town of Bethlehem, 21 Misc 3d 1117[A], 2006 NY Slip Op 52650[U], at *2 [Sup Ct, Albany County 2006])
Finally, the granting of the petition to quash the subpoena renders academic the appeal from the supplemental order, issued after the in camera review of subpoenaed documents.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 28, 2023